UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 15-217 (JNE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | **PLEA AGREEMENT AND SENTENCING STIPULATIONS** |
| ZACHARY LEE MORGENSTERN, Defendant. | ) | |

The United States of America and Zachary Lee Morgenstern (hereinafter referred to as "Morgenstern" or the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty an Information charging him with one count of Threats To Kill, in violation of Title 18, United States Code, Section 844(e). In light of the defendant's agreement as to the scope of relevant conduct in this case, as set forth below in the Factual Basis, the government agrees not to charge the defendant with the other crimes with which he was charged in the Complaint in this case and further agrees that defendant will not be further prosecuted in the District of Minnesota for any offenses known or suspected as a result of the investigation that led to the charges in this case as of the date of this plea agreement.


SCANNED
AUG - 7 2015
U.S. DISTRICT COURT MPLS

2. **Factual Basis**. The United States and the defendant agree that the following facts are true and correct:

At all times relevant to the charges and relevant conduct in this case, the defendant resided in Texas.

From a period beginning in at least in or about October 2014, and continuing until in or about May 2015, the defendant made a series of threatening communications against a number of different victims in the Marshall, Minnesota area, using instrumentalities of interstate commerce. The defendant, cloaking himself in anonymized email addresses, Twitter handles, and Internet-based phone accounts, made threats to kill a police officer and her family; threats to use explosives to blow up a school; and threats to use guns to shoot up a school. The defendant also engaged in a series of "swatting" attacks, in which he made hoax phone calls to law enforcement making it appear that there was a violent crime in progress at a residence, when in fact no such crime was taking place. The defendant engaged in these "swatting" calls with the intent that they would result in an emergency police response to the residence, ideally involving a SWAT team, for purposes of harassing and intimidating the individuals living at that residence.

On October 7, 2014, the defendant called the Marshall, Minnesota Police dispatch center and claimed to have taken two people hostage at a residence of

H.M., a minor, in Marshall. He further claimed he had shot one of the hostages in the knee cap and that he was going to kill both hostages and burn down their house unless he received a duffel bag containing a half a million dollars. He also stated that if he saw one armed police officer, he would kill both hostages and the police officer. A Marshall Police officer was contacted by dispatch and was later able to determine that the call was a hoax. The defendant made the October 7, 2014 phone call to Marshall Police dispatch in an attempt to "swat" H.M.

On January 6, 2015, defendant called in a bomb threat into the Marshall, Minnesota Police Department dispatch center. In the call, the defendant claimed to be D.R., a 17-year-old male from Marshall, Minnesota, and he states that he had placed bombs around Marshall High School that were set to detonate in approximately one hour. School officials evacuated the school and responding officers searched the school and determined the threat was a hoax. The defendant used an Internet-based telephone service that concealed where the phone call was coming from and made it impossible to be traced back to him.

Approximately four hours after the bomb threat was received by Marshall Police dispatch, D.R. received a direct message from Twitter user @RIURichHomie which read "OOPS. NICE BOMB THREAT.

TEEHEEEEEEEE :)." D.R. and his friend, S.V., also received a direct message on January 6, 2015 from @RIURichHomie, in which @RIURichHomie claimed responsibility for the bomb threat and threatened to issue a bomb threat for the school attended by D.R. and S.V. Defendant created the Twitter handle @RIURichHomie and used it to send the above direct messages to D.R. and S.V.

On January 7, 2015, T.P., the juvenile girlfriend of S.V. had her cellular phone rendered inoperable due to receiving a series of 222 consecutive text messages over a period of 46 minutes from a telephone number that was unknown to her. All 222 text messages consisted of the identical text message "FRM: anonymously.lulzsec@gmail.com MSG: @RIURichHomie." Defendant used a program, called an SMS bomb, to send the 222 text messages, and he did so with the intent to disable T.P.'s cellular phone.

On January 8, 2015, a call was received by Marshall Police dispatch from an unknown male who claimed he had taken a father and son hostage at gunpoint at their residence in Marshall. The caller claimed he had already shot the father in the leg and would soon shoot both hostages in the head. The address provided by the caller for the hostage situation was the residence of D.R. Police responded to the call and learned that it had been a hoax. The

defendant made the January 8, 2015 phone call to Marshall Police dispatch, and he did so in an attempt to "swat" D.R.

Shortly after the call was received by Marshall Police dispatch, D.R. received a direct message from Twitter user @RIURichHomie in which @RIURichHomie stated he was in the process of "swatting" D.R. The defendant sent the January 8, 2015 direct message to D.R.

On January 9, 2015, a call was received by Marshall Police dispatch from a male caller who claimed to be D.R., in which the caller stated that he was going to "shoot up" Marshall High School in thirty minutes and kill everybody. Shortly after the call was received, Twitter user @RIURichHomie tweeted that D.R. was going to shoot up a school in ten minutes. The defendant made the January 9, 2015 call to the Marshall Police dispatch and sent the January 9, 2015 tweet from the @RIURichHomie account.

On January 11, 2015, an email message was received by the Superintendent of Marshall, Minnesota Public Schools which had purportedly been sent by D.R. In the message, the sender claimed he was D.R. and had planted a bomb at a Marshall school that would detonate at 10:00 am the following day. The sender also claimed he would arrive at a different Marshall school at the same time and shoot students and faculty members. The

defendant sent the January 11, 2015 email to the Superintendent of Marshall Public Schools.

On January 29, 2015, an email message was received by a Marshall Public Schools employee that purportedly had been sent by D.R. In the message, the sender claimed he/she had placed a bomb in the building and all survivors would be killed by a team who would be coming to the school. The defendant sent the January 29, 2015 email to the Marshall Public Schools employee.

On February 16, 2015, the Marshall Police dispatch received a phone call from a person identifying himself as a 13-year-old boy named I.W., who claimed that two black men had just broken into his apartment and shot his mother in the leg. He told the dispatcher that he was frightened and hiding in a bedroom closet, that the men were in the living room with his mother and 3-year-old sister, and that he could hear the men yelling at his mother. Police responded to the call and determined it was a hoax. The defendant made the February 16, 2015 swatting call.

On April 20, 2015, a caller identifying himself as "Florian the Bomb Threat God of Marshall" left a voicemail message for a Marshall Police Officer who worked as a school resource officer at Marshall High School. The caller stated that he had heard that the officer had been "spreading rumors that he

[Florian] was about to be caught." He stated that it was "not possible" that he would get caught because he was a "hacker," and "you can't catch a hacker." He further stated "you're a fat fucking lesbian. I want to kill your family, I want to kill your family, I want to make you watch me kill your family. I am going to call a bomb threat into your house every day, just to piss you off. And then, I am going to jerk off to it. How does that make you feel? How does it make you feel to know that I am a hacker?" The April 20, 2015 voicemail for the Marshall Police Officer was left by the defendant.

On April 26, 2015, an anonymous caller left a voicemail message for a different Marshall Police Officer in which he claimed to have the Social Security Number ("SSN") of the police officer and he was trying to decide in what way he would use the SSN to commit fraud, and that he was considering using the police officer's SSN to obtain credit cards or purchase a car.

**Other Swatting/Threats**

In addition to the threats, harassment, and swatting attacks against individuals in Marshall, Minnesota, the defendant also engaged in other threats and swatting attacks against individuals in other states.

For example, on or about December 24, 2014, the defendant called the Amelia, Ohio Police dispatch center and claimed to be a boy hiding in the closet while a home invasion was in progress. He falsely stated that he was

calling from a residence in Amelia, and that three men broke into his house and shot his mother

A few days later, on or about January 3, 2015, the defendant called the Amelia, Ohio Police dispatch center and claimed to be a man who was going to kill his ex-wife. The defendant falsely stated that he was calling from a residence in Amelia, that he had his wife strapped to a chair with explosives attached to it, and that he was "about to blow this bitch's brains out."

On or about February 10, 2015, the defendant contacted the Amesbury, Massachusetts Police dispatch center and claimed to be a boy hiding in his closet at an address that was the residence of G.Q, a minor. He falsely stated that four black men had broken into his residence and shot his mother. The call resulted in an armed police entry into the residence, after which police concluded the call was a hoax.

3. **Waiver of Indictment**. The defendant agrees to waive indictment by a grand jury on this charge and to consent to the filing of a criminal information. The defendant further agrees to execute a written waiver of the defendant's right to be indicted by a grand jury on this offense.

4. **Waiver of Pretrial Motions**. The defendant understands and agrees that defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea

agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

5. **Statutory Penalties**. The parties agree that Count 1 of the Information carries the following statutory penalties:

a. a maximum of 10 years imprisonment;

b. a maximum supervised release term of 5 years;

c. a fine of up to $250,000 or twice the gross gain or loss;

d. a mandatory special assessment of $100;

e. payment of mandatory restitution in an amount to be determined by the Court; and

f. assessment to the defendant of the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

6. **Revocation of Supervised Release**. The defendant understands that if defendant were to violate any condition of supervised release, defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

7. **Guideline Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a. Base Offense Level. The parties agree that the base offense level for Count 1 is **12.** (U.S.S.G. § 2A6.1(a)(1)).

b. Specific Offense Characteristics. The parties agree that the offense level should be increased by **2** levels because the offense involved more than two threats (U.S.S.G. § 2A6.1(b)(2)); and that the offense level should be increased by **4** levels because the offense resulted in a substantial disruption of public functions or services. The parties agree that no other specific offense characteristics apply.

c. Chapter 3 Adjustments. The parties agree that the offense level should be increased by **6** levels because the offense involved an official victim (U.S.S.G. § 3A1.2(a) & (b)); and that the offense level should be increased by **2** levels because the defendant used a special skill in a manner that significantly facilitated the commission and concealment of the offense (U.S.S.G. § 3B1.3).

d. Total Offense Level. The parties agree that the total offense level for Count 1 is **26.**

e. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **3**-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. §3E1.1). The parties agree that other than as provided for herein no other Chapter 3 adjustments apply.

f. Criminal History Category. Based on information available at this time, the parties believe that the defendant's criminal history category is I. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by

the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

e. Guideline Range. If the offense level is **23**, and the criminal history category is **I**, the Sentencing Guidelines range is **46 to 57 months** of imprisonment.

f. Fine Range. If the adjusted offense level is 23, the fine range is $10,000 to $100,000. (U.S.S.G. § 5E1.2(c)(3)).

g. Supervised Release. The Sentencing Guidelines require a term of supervised release of at least two years but not more than five years. (U.S.S.G. § 5D1.2).

h. Sentencing Recommendation and Departures. The parties reserve the right to make a motion for departures from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties reserve the right to argue for a sentence outside the applicable Guidelines range.

8. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. (U.S.S.G. § 5E1.3). The defendant agrees to pay the special assessment prior to sentencing.

10. **Restitution**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of ~~her~~ his crimes. There is no agreement as to the amount of restitution. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Information or the specific count of conviction.

The defendant represents that the defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. The defendant agrees to complete a financial statement fully and truthfully before the date of sentencing.

11. **Waivers of Appeal and Collateral Attack.** The defendant understands that 18 U.S.C. § 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights conferred by

18 U.S.C. § 3742 to appeal defendant's sentence unless the sentence exceeds 57 months. In addition, the defendant expressly waives the right to petition under 28 U.S.C. § 2255, other than for claims of ineffective assistance of counsel. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived.

12. **Complete Agreement**. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, inducements, or understandings related to the plea or sentencing of the defendant.

Date: August 7, 2015

ANDREW M. LUGER
United States Attorney

BY: TIMOTHY C. RANK
Assistant U.S. Attorney

Date: August 7th 2015

ZACHARY LEE MORGENSTERN
Defendant

Date: 7 Aug 2015

ANDREW H. MOHRING
Counsel for Defendant