UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-217 (JNE)

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                                       )<br>            Plaintiff,                       )<br>                                                       )<br>v.                                                   )<br>                                                       )<br>ZACHARY LEE MORGENSTERN,   )<br>                                                       )<br>            Defendant.                     ) | **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Timothy C. Rank, hereby submits this memorandum setting forth its position with respect to sentencing factors in this matter.

**I.      The Offense**

     **A.      The Marshall, Minnesota threats/harassment/swatting**

From a period beginning in at least in or about October 2014, and continuing until in or about May 2015, the defendant made a series of threatening communications against a number of different victims in the Marshall, Minnesota area. The defendant, hiding his true identity behind anonymized email addresses, Twitter handles, and Internet-based phone accounts, made threats to kill a police officer and her family; threats to use explosives to blow up a school; and threats to use guns to shoot up a school. The defendant also engaged in a series of "swatting" attacks, in which he made hoax phone

calls to law enforcement making it appear that there was a violent crime in progress at a residence, when in fact no such crime was taking place.  The defendant engaged in these "swatting" calls with the intent that they would result in an emergency police response to the residence, ideally involving a SWAT team, for purposes of harassing and intimidating the individuals living at that residence.

The first incident occurred on October 7, 2014, when the defendant called the Marshall, Minnesota Police dispatch center and claimed to have taken two people hostage at a residence of H.M., a minor, in Marshall.  He further claimed that he had shot one of the hostages in the knee cap and that he was going to kill both hostages and burn down their house unless he received a duffel bag containing a half a million dollars.  He also stated that if he saw one armed police officer, he would kill both hostages and the police officer.  A Marshall Police officer was contacted by dispatch and was later able to determine that the call was a hoax.  The defendant made the October 7, 2014 phone call to Marshall Police dispatch in an attempt to "swat" H.M.

The next series of incidents started in January 2015 and continued until the defendant was arrested in May of 2015.  On January 6, 2015, defendant called in a bomb threat into the Marshall, Minnesota Police Department dispatch center.  In the call, the defendant claimed to be D.R., a 17-year-old male from Marshall, Minnesota, and he stated that he had placed bombs around Marshall High School that were set to detonate in approximately one hour. School officials evacuated the school and responding officers searched the school and determined the threat was a hoax.  The defendant used an

Internet-based telephone service that concealed where the phone call was coming from and made it impossible to be traced back to him.

Approximately four hours after the bomb threat was received by Marshall Police dispatch, D.R. received a direct message from Twitter user @RIURichHomie which read "OOPS. NICE BOMB THREAT. TEEHEEEEEEEE :)." D.R. and his friend, S.V., also received a direct message on January 6, 2015 from @RIURichHomie, in which @RIURichHomie claimed responsibility for the bomb threat and threatened to issue a bomb threat for the school attended by D.R. and S.V. Defendant created the Twitter handle @RIURichHomie and used it to send the above direct messages to D.R. and S.V.

On January 7, 2015, T.P., the juvenile girlfriend of S.V. had her cellular phone rendered inoperable due to receiving a series of 222 consecutive text messages over a period of 46 minutes from a telephone number that was unknown to her. All 222 text messages consisted of the identical text message "FRM: anonymously.lulzsec@gmail.com MSG: @RIURichHomie." Defendant used a program, called an SMS bomb, to send the 222 text messages, and he did so with the intent to disable T.P.'s cellular phone.

On January 8, 2015, a call was received by Marshall Police dispatch from an unknown male who claimed he had taken a father and son hostage at gunpoint at their residence in Marshall. The caller claimed he had already shot the father in the leg and would soon shoot both hostages in the head. The address provided by the caller for the hostage situation was the residence of D.R. Police responded to the call and learned that

it had been a hoax. The defendant made the January 8, 2015 phone call to Marshall Police dispatch, and he did so in an attempt to "swat" D.R.

Shortly after the call was received by Marshall Police dispatch, D.R. received a direct message from Twitter user @RIURichHomie in which @RIURichHomie stated he was in the process of "swatting" D.R. The defendant sent the January 8, 2015 direct message to D.R.

On January 9, 2015, a call was received by Marshall Police dispatch from a male caller who claimed to be D.R., in which the caller stated that he was going to "shoot up" Marshall High School in thirty minutes and kill everybody. Specifically, the defendant stated: "Yes, um, my name is [D.R.], I'm a member of ISIS. Today I'm shoo, I'm shooting up Marshall High School and blowing up everybody, and aah yeah, I'm going to kill everybody in 30 minutes. Have fun." Shortly after the call was received, Twitter user @RIURichHomie tweeted that D.R. was going to shoot up a school in ten minutes. The defendant made the January 9, 2015 call to the Marshall Police dispatch and sent the January 9, 2015 tweet from the @RIURichHomie account.

On January 11, 2015, an email message was received by the Superintendent of Marshall, Minnesota Public Schools which had purportedly been sent by D.R. In the message, the sender claimed he was D.R. and that he had planted a bomb at a Marshall school that would detonate at 10:00 am the following day. The sender also claimed he would arrive at a different Marshall school at the same time and shoot students and

4

faculty members. The defendant sent the January 11, 2015 email to the Superintendent of Marshall Public Schools. The email stated:

> My name is [D.R.] and I am doing this in the name of ISIS. I have been picked on and bullied for years because of my beliefs in Allah, and tomorrow is my day. Allah has finally guided me and I know what I must do. At approximately 10 am, bomb will go off at one of the schools in Marshall School District. At another school I will arrive with an AR-15 and I will shoot every single student and faculty member that I see. You are being given this warning because I understand that Allah forgives some of you, and some deserve to live. This is your warning.

On January 29, 2015, an email message was received by a Marshall Public Schools employee that purportedly had been sent by D.R. In the message, the sender claimed he had placed a bomb in the building and all survivors would be killed by a team who would be coming to the school. The defendant sent the January 29, 2015 email to the Marshall Public Schools employee. The email stated:

> Hello.
> I am a very angry confused student of Marshall Public School.
>
> I self-harm to make me feel better but I got a better way to make me feel a lot better.
>
> I have strategically placed explosives inside the building. If there any remaining people that survived the bomb, my team will come to your school to kill EVERY survivor.
>
> Good fucking luck.

On February 16, 2015, the Marshall Police dispatch received a phone call from a person identifying himself as a 13-year-old boy named I.W., who claimed that two black men had just broken into his apartment and shot his mother in the leg. He told the

5

dispatcher that he was frightened and hiding in a bedroom closet, that the men were in the living room with his mother and 3-year-old sister, and that he could hear the men yelling at his mother.  Police responded to the call and determined it was a hoax.  The defendant made the February 16, 2015 phone call, and he did so in an attempt to "swat" I.W.

On April 20, 2015, a caller identifying himself as "Florian the Bomb Threat God of Marshall" left a voicemail message for a Marshall Police Officer who worked as a school resource officer at Marshall High School.  The caller stated that he had heard that the officer had been "spreading rumors that he [Florian] was about to be caught."  He stated that it was "not possible" that he would get caught because he was a "hacker," and "you can't catch a hacker."  He further stated "you're a fat fucking lesbian.  I want to kill your family, I want to kill your family, I want to make you watch me kill your family.  I am going to call a bomb threat into your house every day, just to piss you off.  And then, I am going to jerk off to it.  How does that make you feel?  How does it make you feel to know that I am a hacker?"  The April 20, 2015 voicemail for the Marshall Police Officer was left by the defendant.

On April 26, 2015, an anonymous caller left a voicemail message for a different Marshall Police Officer in which he claimed to have the Social Security Number ("SSN") of the police officer and he was trying to decide in what way he would use the SSN to commit fraud, and that he was considering using the police officer's SSN to obtain credit cards or purchase a car.


### B. Other Swatting/Threats

In addition to the threats, harassment, and swatting attacks against individuals in Marshall, Minnesota, the defendant also engaged in other threats and swatting attacks against individuals in other states.

For example, on or about December 24, 2014, the defendant called the Amelia, Ohio Police dispatch center and claimed to be a boy hiding in the closet while a home invasion was in progress. He falsely stated that he was calling from a residence in Amelia, and that three men broke into his house and shot his mother

A few days later, on or about January 3, 2015, the defendant called the Amelia, Ohio Police dispatch center and claimed to be a man who was going to kill his ex-wife. The defendant falsely stated that he was calling from a residence in Amelia, that he had his wife strapped to a chair with explosives attached to it, and that he was "about to blow this bitch's brains out."

On or about February 10, 2015, the defendant contacted the Amesbury, Massachusetts Police dispatch center and claimed to be a boy hiding in his closet at an address that was the residence of G.Q, a minor. He falsely stated that four black men had broken into his residence and shot his mother. The call resulted in an armed police entry into the residence, after which police concluded the call was a hoax.

## II. The PSR

The government has no objections to the factual statements contained in the PSR. The government does not dispute the methodology used by the Probation Officer in

arriving at the guideline calculations set forth in the PSR.  The parties stipulated to a different guidelines calculation, which treated all of the defendant's conduct enumerated in the plea agreement as relevant conduct and resulted in a higher offense level and guidelines range than the PSR.  The parties stipulated that, after adjustment for acceptance of responsibility, the appropriate offense level was for defendant's conduct was 23, with a guidelines range of between 46 to 57 months.  The government respectfully submits that the offense level and guidelines range in the plea agreement more accurately reflects the defendant's conduct.

### III.     The Appropriate Sentence

Zach Morgenstern engaged in a pattern of harassing activity against several victims using the cloak of anonymity afforded by the Internet, wreaking emotional havoc and causing the needless expenditure of public funds to respond to his hoax emails, tweets, and phone calls.  The defendant's crimes evince ample technical skills but a shocking lack of empathy.  He had no good reasons to explain his attacks, and appeared to take a sadistic pleasure in the suffering he caused.  This is not the defendant's first brush with the law, and yet, unfortunately, his prior contacts with law enforcement were not sufficient to deter him from committing the crimes for which he is now being sentenced.  He needs a sentencing consequence that commands his attention in a way that his previous interactions with law enforcement have not.

Significantly, however, the defendant admitted all of his conduct when confronted by law enforcement and his has since met with law enforcement and given a truthful and

forthcoming description of the criminal acts set forth in the plea agreement – not only the specific count to which he has pleaded guilty, but also all of the incidents included as relevant conduct. He also agreed to plead guilty very early on and, unlike many criminal defendants, he did not attempt to minimize his conduct or seek to contest obvious guidelines enhancements, and he has agreed to forfeit all of his computer equipment when there is no statutory basis compelling him to do so. The defendant's conduct since his arrest is notable.

The government seeks a sentence from this Court that recognizes both the significance of the defendant's crimes and the need for defendant to receive a wake-up call, on the one hand, and defendant's acceptance of responsibility for his actions, on the other. The government respectfully submits that a sentence at or slightly below the bottom of the guidelines range is an appropriate punishment for defendant's crimes.

Dated:   November 30, 2015            Respectfully submitted,

                                      ANDREW M. LUGER
                                      United States Attorney

                                      *s/ Timothy C. Rank*

                                      TIMOTHY C. RANK
                                      Assistant United States Attorney